IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM SCHWARTZENBERGER,

    Plaintiff,                               CIV. S. 05-2058 WBS GGH

    vs.

MICHAEL J. ASTRUE,[1]                    FINDINGS AND RECOMMENDATIONS
Commissioner of Social Security,

    Defendant.
_____/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding that plaintiff had not been entitled to Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") payments which he had been awarded in 1988 based on a February 26, 1986 application, due to engaging in substantial gainful activity. For the reasons that follow, the court recommends plaintiff's Motion for Summary Judgment or Remand be denied, and the Commissioner's Motion for Summary Judgment be granted. The Clerk should be directed to enter judgment for the Commissioner.

\\\\\

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

PROCEDURAL BACKGROUND

Plaintiff was found disabled by an ALJ on April 5, 1988, due to back impairments, and was granted benefits for a February 12, 1986 onset date. According to the record, on April 22, 1998, an anonymous person[2] reported to the Social Security Administration that plaintiff was working at Bill's Used Cars during the time he was receiving SSA disability benefits. (Tr. at 192, 195, 201.) The SSA requested that plaintiff verify certain information regarding his ownership interest in Bill's Used Cars, which was owned by his father, and for which plaintiff's 1984 tax returns and 1986 divorce papers reflected a half ownership interest by plaintiff. (Tr. at 162.) This verification form also stated that a note in plaintiff's file from Delta Orthopaedic Medical Group, indicated that as of June 25, 1986, plaintiff had returned to work, and as of April 16, 1987, plaintiff has not attempted to return to work but does occasionally assist his father at the car lot. Plaintiff completed and signed the form on November 6, 1999, indicating that he has no ownership interest in the used car business, that he goes to the lot often and helps his father by taking cars to get detailed, but that he does not get paid for it. (Id. at 162-63.) On March 21, 2000, the matter was referred to the Office of Investigations. (Id. at 282.) The Office of the Inspector General conducted an undercover surveillance of Bill's Used Cars on May 21, 2001 and March 8, 2002. (Id. at 220-21.) The agent's report indicates that plaintiff worked at the lot every day of the week but one, and that he was familiar with all aspects of the business. At one of the visits, plaintiff stated that he was the only one working there that day. (Id.) On March 7, 2002, plaintiff was informed by the SSA that it was conducting a Continuing Disability Review ("CDR"). (Id. at 204.) Plaintiff appeared for the review on March 28, 2002. (Id. at 204.) The report of that interview states that plaintiff reported that he helps his father and spends most of his time at the business. He declined to put a monetary value on the time he spends running errands for the business, but did tell the interviewer that he is at the business six

---

[2] It is alleged that the first anonymous phone call was from plaintiff's ex-wife.

days a week. (Id. at 218.)

On March 29, 2002, the SSA received another anonymous phone call from a neighbor of plaintiff's, later identified as George Menko, who accidentally received plaintiff's disability check in the mail. The neighbor reported that he observed plaintiff doing work around his house, including painting it, putting up fences, and mowing the lawn. The caller also reported that plaintiff was working six days a week at his father's business. (Id. at 295.) On February 7, 2003, the SSA sent plaintiff another notice for a CDR, telling him to appear on March 11, 2003. (Id. at 240.)

A report of contact, dated February 27, 2003, states that plaintiff's doctor's progress notes, dated February 7, 1986, state that plaintiff reported to doctor he could not stop working due to his divorce. (Id. at 227.) Other progress notes dated June 25, 1986, state plaintiff returned to work, but takes off every three days or so. A progress note from August 20, 1986 states that plaintiff tried to get the doctor to write a note stating he was disabled so that he could avoid prosecution for non-payment of child support. (Id. at 228.) A December 24, 1986 note in the divorce papers states that plaintiff will retain rights to his sole and separate property, and the first item listed is "one half interest in business known as 'Bill's Used Cars.'" (Id.) A doctor's note from April 16, 1987 states that plaintiff has not tried to return to work, but does occasionally assist his father at a used car lot. (Id.) A March 30, 1989 child visitation order states that plaintiff was "materially false in his testimony during trial." (Id. at 229.) This report of contact appears to document plaintiff's alleged substantial gainful activity over 14 pages. At the end of the report, there is a note which states that benefits should never have been paid and the basis for reopening is fraud. (Id. at 239.)

On March 17, 2003, plaintiff was informed that he did not qualify for disability payments due to his employment since June, 1986. Plaintiff was given ten days to submit information before the decision became final. (Id. at 254.) On this date, the report of field review of CDR states that "due process has been provided, but the decision must be properly

3

posted to the MBR and final notification, including overpayment and Medicare information must be provided." (Id. at 249.) On one of the processing sheets is a handwritten note stating, "high profile case OIG fraud/criminal prosecution active - please input ASAP!" (Id. at 251.)

On August 6, 2003, the Appeals Council advised plaintiff that it was going to reopen the decision due to fraud or similar fault, and remand the case to an ALJ for further proceedings unless plaintiff could submit evidence showing he performed no work activity or that his work was not substantial gainful activity. Plaintiff was given 30 days to submit additional evidence or a written statement and to request oral argument. (Id. at 176-78.)

On August 26, 2003, plaintiff sent a letter to the Appeals Council requesting a sixty day extension before a remand occurred, explaining that he was in the process of obtaining counsel, and requesting copies of exhibits in his file pertaining to the pending matters. (Tr. at 183.) On September 7, 2003, the SSA sent plaintiff a letter informing him that it was terminating his benefits immediately based on his work activity. Plaintiff was advised that if he had any questions, he could visit any Social Security office. (Id. at 340-43.)

On September 15, 2003, the Appeals Council sent plaintiff an order remanding the case to an ALJ, explaining that it was not complying with plaintiff's request for an extension of time because it believed a remand could not be avoided and did not want to delay the remand. It stated that the hearing office would permit plaintiff the opportunity to examine his file prior to scheduling a hearing. (Id. at 180.)

On December 9, 2003, plaintiff was sent a notice of hearing scheduled for January 26, 2004. On January 21, 2004, plaintiff's representative requested issuance of subpoenas for OIG special agent Coonce, Lodi Social Security Office employees Abel and Bradford, and for George Menko, the possible anonymous phone caller. (Id. at 372, 384, 405, 427.) At the January 26, 2004 hearing in which plaintiff was represented by attorney Ann Cerney, ALJ Baker informed plaintiff that he would not issue subpoenas without an offer of proof. (Id. at 614.) The ALJ granted a continuance so that plaintiff's counsel could further investigate the matter. (Id. at

4

609.)

On May 17, 2004 a new ALJ sent plaintiff a notice of hearing setting the matter for June 17, 2004. (Id. at 446.) On May 25, 2004, plaintiff's counsel filed objections, claiming that the issues were stated differently than those specified by the Appeals Council in its remand order. (Id. at 451.) Plaintiff's counsel also submitted declarations by plaintiff's investigator in support of the request for subpoenas for George Menko (anonymous phone caller and neighbor), Sandra Johnson (SSA OIG [3] special agent), Lori Waidley (SSA supervisor in Lodi), Phi Ngyuen (SSA employee at Lodi office), Stephanie Coonce (SSA OIG special agent), Rita Abel (SSA employee at Lodi office), and Gloria Bradford (SSA employee at Lodi office). (Id. at 453-66.)

It is unclear whether a hearing was held on June 17, 2004. A declaration by Ann Cerney states that the June 17, 2004 hearing was held before ALJ Havens,[4] that plaintiff's counsel, Mr. Yucht, expressed his concerns to the ALJ about plaintiff's exposure to criminal prosecution, that plaintiff would probably assert his Fifth Amendment rights at the hearing, that the ALJ responded not to worry because fraud is no longer an issue,[5] and that she just intended to determine whether plaintiff had engaged in substantial gainful activity. She then continued the hearing so plaintiff could determine how to handle the matter at the next hearing. (Id. at 566-67.)

---

[3]  If the purported ALJ statement had actually been made, or more to the point, whether counsel believed she heard such a statement and was mislead in such a manner that she was not able to adequately prepare for the later hearing where fraud was apparently at issue, her later actions belie this present day contention. As the facts show, infra, when it came time for plaintiff to testify, he was apparently advised to take the Fifth Amendment, and he indeed asserted this right. This would be odd if counsel were really under the impression that past fraud was not an issue. Counsel sought to subpoena witnesses for the later hearing whose pertinence of testimony would relate to the alleged fraud – again odd, if counsel truly believed that fraud was not an issue.
  In any event, as the court later discusses, this statement, technically correct if it was made, has no effect on the outcome of the case.

[4]  ALJ Baker died before the June, 2004 hearing.

[5]  Plaintiff makes a point of this statement by the ALJ because in her later decision, she concluded that plaintiff had committed fraud or similar fault, and she drew an adverse inference from his refusal to testify under the Fifth Amendment. (Tr. at 21.) Plaintiff later requested a tape of this hearing based on this statement; however, it could not be located.

1  A notice of appeals council action states that there is no tape recording of this hearing.  (Id. at
2  10.)
3           On September 1, 2004 a hearing was scheduled for October 5, 2004.  (Id. at 467.)
4  Plaintiff also requested judicial notice of a money judgment in favor of plaintiff against George
5  Menko who was criminally prosecuted for damage to plaintiff's property.  (Id. at 502.)
6           On September 16, 2004, plaintiff's counsel filed a motion to dismiss based on the
7  fact that OIG investigator Coonce had filed a report that plaintiff made no false statements
8  regarding his employment so that a determination of criminal wrongdoing or fraud could not be
9  made.  (Id. at 471-73, 477-80.)  Plaintiff's counsel also filed objections to the issues in the
10 September 1, 2004 notice of hearing.  (Id. at 486-87.)
11          Plaintiff's counsel requested subpoenas for OIG investigators Johnson and
12 Coonce (aka Flohr) and SSA supervisor Waidley on September 22, 2004.  (Id. at 489-535.)
13          At the October 5, 2004 hearing, the ALJ denied the motion to dismiss and request
14 for subpoenas.  (Id. at 573-74, 579.)   The ALJ also denied plaintiff's oral motion to strike
15 evidence based on denial of due process and fundamental fairness in regard to not being able to
16 question witnesses for whom subpoenas had been requested and denied.  (Id. at 580.)  Plaintiff
17 then asserted his Fifth Amendment right not to testify.  (Id. at 582.)
18          On October 21, 2004, the ALJ issued a decision finding that plaintiff had
19 performed substantial gainful activity within twelve months of his application for benefits, and
20 had committed fraud or similar fault in connection with this application.[6]  (Id. at 22, 21.)
21          On December 14, 2004, plaintiff's counsel requested a hearing tape of the January
22 26, 2004, June 17, 2004 and October 5, 2004 hearings, but the Appeals Council did not provide

---

[6] The ALJ stated that as a result of this finding, a substantial overpayment will result but that this issue was not before her.  (Id. at 23.)  Plaintiff states that the SSA calculated the overpayment to be $103,564, but waived the overpayment on August 15, 2005.  Plaintiff's Mot. at 11.  Plaintiff cites to attached Exhibits A and B, but did not attach any exhibits to his motion.
Plaintiff apparently had received these payments since 1988 as DIB, (Tr. at 340-42), but was not receiving SSI payments because of his earnings.  (Id. at 204.)

6

the tape of the June 17th hearing.  (Id. at 536, 542.)  Plaintiff requested remand due to the lost tape doctrine.  (Id. at 543.)  The Appeals Council denied the request for review made on this basis and other issues, on August 10, 2005.  (Id. at 9-13.)

ISSUES

Plaintiff has made the issues difficult to determine by casting the facts argumentatively.  Are there issues to be found here, or are the only issues those which appear in the labeled Argument.  The court requires that issues be expressly set out so that it need not guess about them.  To the extent that issues may be present in the factual section, they will not be part of this decision, except, of course, as plaintiff may expressly raise them in the Argument section. Plaintiff argues the following issues (not all sub-issues are included).

      1. Whether the Appeals Council erred in reopening the case;

      2. Whether the ALJ's October 21, 2004 decision was proper;

         a. whether the ALJ should have reopened, the already reopened decision;

         b. whether the ALJ's decision is not based on substantial evidence, wherein the ALJ made various errors in adjudication of the remand, including, drawing an adverse inference from invocation of the Fifth Amendment, and various other errors;

      3. Social Security Administration Misconduct (these issues are difficult to delineate insofar as plaintiff does not link most issues very well, or at all, to deficiencies in the hearing itself which led to the final decision under review; the subpoena sub-issue raised herein will be handled in Issue 2).

The undersigned will address the issues under the categories set forth above; however, not all the sub-issues will be discussed where plaintiff discussed them.

DISCUSSION

   I. Appeals Council Decision to Reopen Case

Plaintiff contends that the Appeals Council's September 15, 2003 order to reopen the case should be set aside because there is not substantial evidence that the April 15, 1988

decision was obtained by fraud, and therefore the October 21, 2004 ALJ decision should also be set aside, and the 1988 decision reinstated.

Plaintiff first contends that he was not given the opportunity to contest the decision to reopen the 1988 decision, and that his motion to dismiss was summarily denied without comment. Furthermore, the reason for the reopening, fraud, ceased to exist at some point in the proceedings, as acknowledged by the SSA-OIG and the ALJ. (Tr. at 433, 569.) Therefore, according to plaintiff, the original basis for reopening the decision no longer existed.

The Commissioner has discretion to reopen a decision at any time if it "was obtained by fraud or similar fault." 20 C.F.R. §§ 404.988(c)(1), 416.1488(c)(1). The Commissioner's decision whether to re-open a final claim is purely discretionary, and is therefore not itself a "final" decision within the meaning of 42 U.S.C. § 405(g). Davis v. Schweiker, 665 F.2d 934, 935 (9th Cir. 1982). It is not subject to judicial review. Id.[7] The only exception is where there is a colorable constitutional claim of violation of due process. Udd v. Massanari, 245 F.3d 1096, 1099 (9th Cir. 2001). Thus, to the extent that plaintiff takes issue with the substance of the reopening decision, in order to contest *that* decision, the court is without jurisdiction to review it. Plaintiff's argument that the Appeals Council lacked sufficient evidence to reopen the decision, i.e., find fraud or similar conduct, is unavailing.

However, there were due process problems, but not the ones referenced by plaintiff. The record shows that plaintiff received a tentative decision at a lower echelon of the Administration telling him he had ten days to submit information, or the decision to terminate his benefits would be final. The record is silent after that with respect to whether plaintiff supplied any other information; the record is even silent concerning whether a final decision at

---

[7] Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides the exclusive remedy for seeking judicial review of decisions of the Commissioner, provided such decisions are "final [and] . . . made after a hearing." Moreover, 42 U.S.C. § 405(h) provides that "[n]o . . . decision of the [Commissioner] shall be reviewed . . . except as herein provided;" see generally Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013 (1984); Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980 (1977).

this level was in fact entered.  And, the parties are silent.  Somehow, nevertheless, the matter received the attention of the Appeals Council which notified plaintiff that it would reopen his case (for the purpose of possibly terminating his benefits), but that he had 30 days to convince them otherwise.  As the facts indicate, plaintiff sought an extension of time to acquire legal counsel, and review the evidence.  The Appeals Council reversed field and decided it did not need to hear from plaintiff after all, and sent the matter to hearing before and ALJ.  Prior to the commencement of that hearing, plaintiff was notified that his benefits were terminated, effective immediately.

The Appeals Council, when reviewing materials outside the record in determining whether to reopen an otherwise final decision, may do so sua sponte, and does not have to give plaintiff an opportunity to be heard at ths level.  20 CFR § 404.992 (c).  However, *prior to the termination of any benefits*, the promised factual hearing must take place.  Id.  This is also the lesson of Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011 (1970).  The parties are silent as to whether plaintiff's benefits were in fact cut off.  In the absence of a claimed defect, the issue is waived, indeed, if the issue had any adverse effect on plaintiff at all.

Plaintiff's arguments concerning whether the decision to reopen was proper, and that he was not notified of his right to contest the reopening, are therefore without merit. Furthermore, plaintiff provides no legal basis for claiming that the reason to reopen may not be changed during the course of the proceedings.  In fact, the notification of decision to reopen states that the reason is "fraud or similar fault," and the basis for reopening the decision did not change.[8]  (Id. at 176.)

\\\\\

---

[8] Plaintiff also argues that reopening can only occur when there has been fraud. Plaintiff's Mot. at 29:19.  Section 404.988(c)(1) provides for reopening for "fraud or similar fault."  Plaintiff's reliance on fraud as the basis for reopening may be the handwritten report of contact which states that fraud was the basis; however, the actual order does not state that fraud is the basis of the remand. (Tr. at 239, 180-82.)

Plaintiff also claims that without fraud, the Appeals Council remand order is without a basis; however, that order does not mention fraud as its basis, but refers to evidence indicating that plaintiff worked after he was found disabled. This argument is unavailable for review in this court as it applies to the substance of the order. (Id. at 180-82.)

In any event, this order refers to specific evidence supporting the remand, including the court judgment in plaintiff's divorce proceedings indicating that plaintiff owned a one half interest in Bill's Used Cars; plaintiff's November 6, 1999 statement which denies his interest in the business but elsewhere states that his father splits the gross pay with him; plaintiff's March 4, 2003 statement admitting he goes to the business daily and helps out since at least 1986, is there between six and eight hours a day, and outlined his many duties at the business; earnings records for plaintiff's father indicating that one half of the earnings would constitute substantial gainful activity for the years 1986 through 1990, 1992 through 1995, and 1997 through 2000. (Id. at 180-81.) The record submitted to the court supports this statement of the evidence. (Id. at 185-86, 162-63, 164-71, 223-25.)

Because the Appeals Council's decision is discretionary and was based on proper reasons, and because the defect observed by the court has not been challenged, the decision is not subject to review.

II. ALJ's Decision on Remand Was Supported by Substantial Evidence

Plaintiff claims that the ALJ decision after remand was not based on substantial evidence for various reasons.

A. Propriety of ALJ Decision

Plaintiff argues that the ALJ's October 21, 2004 decision on remand was improper. He claims that the Appeals Council's remand order had already reopened the decision, that it was not within the ALJ's province to reopen the decision when the remand order did not direct the ALJ to do so, and that the ALJ's decision was inconsistent with the remand order.

\\\\\

20 C.F.R. § 404.977(b) provides:

> Action by administrative law judge on remand. The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.

Plaintiff is correct. The Appeals Council reopened the decision, i.e., vacated the 1980s hearing decision, (Tr. 180), for a fuller determination of the issues, and a possible favorable decision to plaintiff. The ALJ had no authority to revisit the Appeals Council decision, much as the undersigned has no power to "affirm" a remand from the Ninth Circuit. Ironically, ALJ Baker was correct in relating to plaintiff that the "fraud' issue was over. The Appeals Council found sufficient evidence of fraud to reopen the initial decision, and that was the end of the issue per se. "Fraud" was over because the ALJ was not tasked with determining the intent of plaintiff.

But what was the harm? The substantial gainful activity issues which were also decided by the ALJ utilized the same evidence as the fraud issue. The Appeals Council did not preclude the ALJ from utilizing evidence of purported "fraud or similar conduct" in adjudicating the issues on remand. While a finding of fraud was not necessary, neither were the facts underlying such fraud irrelevant to the SGA remand issues. Indeed, those underlying facts proved the substantial gainful activity.

For the above reasons, plaintiff's assignment of error to the ALJ for reopening the case, while correct, was totally inconsequential.

B. Adverse Inference Based on Invocation of Fifth Amendment

Plaintiff claims the ALJ improperly drew an adverse inference from plaintiff's assertion of the Fifth Amendment in refusing to testify. The ALJ cited DeBonis v. Corbisiero, 155 A.D.2d 299, 547 N.Y.S.2d 274 (1989) in support. Plaintiff argues that according to this case, silence cannot be the sole reason to draw such an inference, but that it may be one of a number of factors. Id. at 276.

1    In civil cases, an adverse inference may be drawn from invocation of the privilege against self-incrimination. Pagel, Inc. v. S.E.C., 803 F.2d 942, 946-47 (8th Cir. 1986), citing Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 521 (8th Cir.), cert. denied, 469 U.S. 1072, 105 S. Ct. 565, 83 L. Ed. 2d 506 (1984); Baxter v. Palmigiano, 425 U.S. 308, 318-320, 96 S. Ct. 1551, 1557-59, 47 L. Ed. 2d 810 (1976).  In Baxter, the court noted, however, that silence alone would be insufficient to support an adverse decision against one who invokes the Fifth Amendment.  Id. at 317, 96 S. Ct. at 1557.  Later, in Lefkowitz v. Cunningham, 431 U.S. 801, 809 n. 5, 97 S. Ct. 2132, 2137, 53 L. Ed. 2d 1 (1977) the Supreme Court explained that silence is only one of a number of factors to be considered in making a determination, and should be given no more probative value than warranted by the facts of the case.

In this case, the ALJ did draw a negative inference from plaintiff's invocation of the Fifth Amendment at the hearing; however, she based her finding of fraud or similar fault on all of the evidence which she described in detail.

> In the case at hand, evidence reveals that the claimant went back to work at his family business shortly after he filed his application for supplemental security income in February of 1986.  As set out by the Administration, a doctor's record from June 25, 1986 states that the claimant had returned to work, but that he stated that he takes time off every three days or so.  In August of 1986, the claimant asked his doctor to write a note stating that he is disabled so that the claimant could avoid prosecution for non-payment of child support, which the Administration characterized as an attempt by the claimant to falsify documents for his own personal interests.  Divorce papers from December of 1986 reveal that the claimant will retain his rights to his sole and separate property, which included a "'one half interest in business known as "Bill's Used Cars."'"  A child visitation order shows that the claimant was "'materially false in his testimony during trial, '" which the Administration found was another instance of the claimant's attempt to defraud for personal gain.  In 1999 the Administration asked the claimant about his work activity in the business, and the claimant reported that he did not have an interest in the business but was splitting the gross profit with his father.  He stated that he goes to the lot often and often takes cars to the smog shop or detail shop for him.  He then alleged that he does not take any money for the work, but added that at different times his father has split the profits from the business with him.  An interview from the fraud investigation revealed that the claimant is at his father's business

> six days a week and spends most of his time running errands. The claimant uses vehicles from the business for his personal use. An undercover agent spoke with the claimant's father, who confirmed that the claimant is there six days a week and can perform all the same duties and functions as the father. The most recent IRS Employer Identification Number (EIN) lists the claimant and his father as partners in the business. Tax returns from before the claimant filed for disability reveal that the claimant was self-employed by the business, although, notably, the business has not paid the claimant one penny "on the books" since he filed for supplemental security income. All of the business profits have been channeled through the claimant's father's supplemental security number (Exhibit 60).

(Tr. at 20.)[9]

The ALJ stated that plaintiff had not submitted "an iota of evidence" to refute her conclusion.[10] She then stated: "The undersigned finds that the claimant's refusal to answer creates a negative inference. All evidence indicates that the claimant returned to work years before the 1988 decision was issued and did not inform the Administration." (Id. at 21.) This analysis unequivocally indicates that plaintiff's silence at the hearing was but one factor supporting the ALJ's decision which was based on all the other evidence provided, and which amounted to substantial evidence to support the decision, even without consideration of plaintiff's silence. The ALJ did not err in taking the adverse inference into account when weighing the evidence against plaintiff.

        C. There Was no Denial of Due Process in Regard to Plaintiff's Requested Subpoenas

Plaintiff argues that the reason he did not submit any evidence to refute the evidence gathered by the ALJ is because the ALJ would not issue subpoenas to the agents and

---

[9] A review of the record supports these findings. (Tr. at 92, 90, 185-86, 535, 162, 293, 52, 298.)

[10] Plaintiff continues to refute that the divorce court made the finding that his testimony during his divorce proceedings was materially false, and claims he will provide evidence in support on request. Plaintiff's Mot. at 34. Plaintiff has not shown good cause for his failure to provide it earlier. See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).

officers who wrote up the reports which plaintiff claims took his medical reports out of context and which omitted important facts. ALJ Baker informed plaintiff's counsel at the January 6, 2004 hearing that he would not issue subpoenas without an offer of proof, such as information based on plaintiff's contact with the witness, or plaintiff's attempt to contact a witness and the witness has refused to talk. (Tr. at 614.) Plaintiff did make an offer of proof with his request for subpoenas on September 22, 2004. (Tr. at 517-26.)

Cross-examination is permitted in administrative proceedings "as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). The ALJ may issue subpoenas when it is "reasonably necessary for the full presentation of a case." 20 C.F.R. § 404(d)(1). Plaintiff has a right to subpoena and cross-examine a physician only if the ALJ relies on that physician's report as substantial evidence. Watson v. Barnhart, 2003 WL 21838474 (N.D. Cal. 2003), citing Richardson v. Perales, 402 U.S. 389, 402 (1971). "[W]here the physician is a crucial witness whose findings substantially contradict the other medical testimony, and when as in this case interrogatories are an inadequate substitute for cross-examination, the claimant has been denied procedural due process if his request to subpoena the physician is not granted." Solis v. Schweiker, 719 F.2d 301 (9th Cir. 1983). The ALJ has discretion to determine whether, and to what extent, cross-examination is permitted, using the standard of what is required for "a full and true disclosure of the facts." Id. at 302; Copeland v. Bowen, 861 F.2d 536, 539 (9th Cir. 1988). "The conduct of the hearing is within the ALJ's discretion 'so long as procedures are fundamentally fair.'" Watson, 2003 WL 21838474 at *2, citing Richardson, 402 U.S. at 401.

These principles apply also to lay witnesses. Beyond the fact that there is no automatic right to a subpoena, there was no due process violation here.[11] The court so finds for

---

[11] Plaintiff's citation to the Manual on the Social Security Administration Hearings, Appeals and Litigation Law (HALLEX) section 1-2-578(B), which states that the ALJ is required to issue a subpoena if "the claimant shows that an individual has evidence or can offer testimony that the claimant cannot obtain without the subpoena, the ALJ determines that the evidence or testimony is reasonably necessary for the full presentation of the case, and the claimant has

two reasons.  First, most of the impeachment testimony sought by plaintiff could well have been provided, if true, by plaintiff's father.  Moreover, and again, plaintiff chose not to dispute the testimony.   In the absence of presenting such testimony, plaintiff's cries of prejudice from not being able to cross-examine the agency employees and plaintiff's neighbor rings hollow.  Moreover, and importantly, while the ALJ did rely somewhat on the opinions of the Agency investigators (Tr. 20 referencing an undercover investigation), by far the majority of the damning evidence came either from plaintiff's admissions himself or from objective evidence.  That is, plaintiff admitted that he split the profits in the business with his father, and that he did at least some work with respect to the business.  (Tr. 230).  Tellingly, none of the profit split was shown on documents submitted to the IRS after plaintiff had applied for Supplemental Security Income.  He went down to the business on a daily basis.  Plaintiff had been found to have been "materially false in his testimony" during a child custody order.  (Tr. 20).  Plaintiff had previously reported a one-half interest in the business at issue during his divorce proceedings.  The statements obtained by the undercover investigators were additive, but the existence of a total disability sham was well developed from the other evidence.  Plaintiff does not suggest that he actually has any evidence which would dispel anyone of the notion that plaintiff engaged in a longstanding disability benefits abuse.  The undersigned does not find any reasonable possibility that the outcome of the administrative process would have been different had the agency employees and the neighbor been subpoenaed.

\\\\\

\\\\\

\\\\\

---

exhausted other means of obtaining this evidence or testimony," is unavailing as it carries no legal force and is not binding.  Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003).
   Furthermore, although the requests for issuance of subpoenas and declarations supporting them may fulfill the requirements of HALLEX section 1-2-578(B), the standard here is substantial evidence, and the proffer by plaintiff, even if permitted to be proven, would not overcome the findings under that deferential standard.  See e.g. tr. 517-526.

15

1  D. Substantial Evidence Supported the Finding That Plaintff Was Not Disabled
2  for Social Security/Supplemental Security Purposes

3  Plaintiff labors in vain to demonstrate that plaintiff's medical condition in the late 1980s was such that he could well have suffered from a potentially disabling condition. The ALJ did not reference this medical evidence because it was not at issue. The very first step in the disability analysis focuses not on one's medical condition, but regardless of the medical condition, did the person perform substantial gainful activity. See 42 U.S.C. § 1382c(a)(3)(A); Lester v. Chater, 81 F.3d 821, 828 (n.5). Many persons work with medical conditions that might preclude others from working, yet the medical conditions do not inhibit the work activities of the many persons. Disability benefits are for those whose medical conditions prevent them from working *in actuality*.

In this case there was ample evidence that plaintiff had continually engaged in substantial gainful activity. Thus, plaintiff's medical condition, or lack thereof, is immaterial.

E. Other Issues

Plaintiff makes other complaints that the ALJ took much of the evidence out of context to make it appear that plaintiff was engaging in fraud. For example, when plaintiff asked his doctor for a note stating he was disabled so he could avoid prosecution for non-payment of child support, plaintiff points out that the record really reflects plaintiff's serious impairments as discussed by his physician which lead to the conclusion that he was in fact disabled. These arguments do not affect the substantial evidence findings by the ALJ.

Plaintiff's arguments regarding his father's statements to the investigator are distinctions without a difference. Whether the agent contradicted herself in misstating the day of the week plaintiff had off is of no consequence. The fact is, plaintiff's father made a statement that plaintiff was working at the used car lot six days per week. (Tr. at 221, 231.) Furthermore, plaintiff's wage earnings are separately documented by earnings records. (Tr. at 227, 223-35.) Plaintiff's argument that ALJ Baker stated there were inconsistencies in Coonce's report and he

wanted her to explain herself, borders on the misleading.  He refers to the hearing transcript during which ALJ Baker stated in response to plaintiff's request for a continuance:

> I'm not confident as to what, if any, information the Office of the Inspector General is going to provide, but as the record stands now there are certainly inconsistencies that need to be addressed, and some of those inconsistencies can only be addressed by you all [talking to plaintiff's representative], because I don't have access to your Claimant, nor do I have access to the records of the used car business.  And we're dealing with a long period of time here. What 15 – almost 20 years now.

(Id. at 609.)

At best, the ALJ's meaning as to whom he thinks is inconsistent is vague.  The court declines to construe any particular meaning from this statement, including a contrary meaning that plaintiff's statements and actions were consistent with disability.

As to another of plaintiff's contentions, that plaintiff's purported income has not been shown by any evidence, the ALJ discussed plaintiff's 1986 divorce papers in which plaintiff states that he retains his rights to a one half interest in Bill's Used Cars, as his separate property. (Id. at 20.)  The ALJ also refers to statements made by plaintiff himself, particularly one made in 1999 wherein he stated that he did not have an interest in the business but was splitting the gross profit with his father.  (Id.)  The ALJ additionally points to IRS records and tax returns indicating plaintiff and his father were partners in the business, and that plaintiff was self-employed by this business.  (Id.)

Plaintiff also contends that the hearing notice issued September 1, 2004 fails to advise plaintiff of the issues the ALJ would be deciding, including whether to reopen the favorable 1988 decision, and whether plaintiff had been disabled since his 1986 onset date.  The hearing notice appears to be a boilerplate form which addresses entitlement to disability in the first instance. (Tr. at 467-470.)  The failure to notify plaintiff of the issues particular to his case was harmless as plaintiff had actual notice based on prior notices, two prior hearings, and the Appeals Council's remand order.  Similarly, the notice dated September 7, 2003, which informs

plaintiff that his benefits are being terminated immediately, did not violate plaintiff's due process rights because plaintiff had previous notice of the Commissioner's intention to reopen the decision for fraud or similar fault.  See August 6, 2003 letter to plaintiff; letter dated March 17, 2003.  (Tr. at 176-77, 254-55.)  That the SSA did not notify him of his right to appeal was not error.  The Program Operations Manual System (POMS) cited by plaintiff does not have the force of law but is only persuasive.  Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).  Plaintiff has cited no other authority for this contention.  The other notices provided plaintiff with the required due process, including a notice two weeks later which notified plaintiff of the reasons for the remand, plaintiff's opportunity to obtain counsel, review his file, and prepare for his hearing.  (Id. at 181-82.)

This court also refuses to find, as plaintiff would wish, that the ALJ failed to make the findings ordered by the Appeals Council on remand.  The Appeals Council had the opportunity to review the ALJ's decision after remand, and determined there was no reason to review it.  (Id. at 9.)

III.  Social Security Administration Misconduct

Plaintiff asserts that OIG investigator and SSA employees were engaged in a conspiracy to set plaintiff up to make false statements during his "CDR-Fraud Appointment."  The court has reviewed the record cited in support of this argument, and finds no basis for it.  As stated previously, the ALJ's decision is based on independent evidence and places only limited reliance on these employees' reports.

Plaintiff also makes a convoluted argument that SSA employee Waidley surreptitiously determined not to officially reopen the initial decision in plaintiff's case because she did not want to tip him off but instead wanted to obtain additional unfavorable evidence against him.  This is another attempt by plaintiff to argue that a conspiracy existed.  Aside from the fact that there is nothing to support this assertion, this court cannot review the administrative decisions underlying the Commissioner's final decision, but only that decision itself.

18

This court is vested with authority only to determine whether the <u>final</u> decision of the Commissioner is supported by substantial evidence and performed under correct legal standards. 42 U.S.C. § 405(g). In this case, since the Appeals Council ultimately denied review, *the decision of the ALJ is the <u>final</u> decision*. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995); <u>O'Dell v. Shalala</u>, 44 F.3d 855, 858 (10th Cir. 1994); <u>Keeton v. Dep't of Health and Human Services</u>, 21 F.3d 1064, 1066 (11th Cir. 1994); <u>Browning v. Sullivan</u>, 958 F.2d 817, 822 (8th Cir. 1992); <u>Russell v. Brown</u>, 856 F.2d 81, 83-84 (9th Cir. 1988); 20 C.F.R. §§ 404.955; 404.967 <u>et</u> <u>seq</u>.; 416.1455; 416.1467 <u>et</u> <u>seq</u>.

CONCLUSION

ACCORDINGLY, IT IS HEREBY RECOMMENDED that plaintiff's Motion for Summary Judgment or Remand be DENIED, the Commissioner's Cross Motion for Summary Judgment be GRANTED, and the Clerk be directed to enter Judgment for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 2/22/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Schwartzenberger2058.ss.wpd